**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| | : | **CASE No. 2:12-CR-162** |
| **v.** | : | |
| | : | |
| **TONY R. FISHER** | : | **CHIEF JUDGE MARBLEY** |
| | : | |

## RESPONSE OF THE UNITED STATES IN OPPOSITION TO DEFENDANT'S MOTION FOR REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

Defendant Tony R. Fisher has filed a motion asking this Court to release him from the custody of the BOP pursuant to 18 U.S.C. § 3582(c)(1)(A) and permit him serve the remainder of his sentence on home confinement, based on the threat posed by the COVID-19 pandemic at FCI Elkton where he is currently detained. The United States respectfully opposes the defendant's motion and submits that the Court should deny the defendant's motion because: 1) this Court lacks authority to act on defendant's motion at this time because the defendant has failed to show that he has exhausted administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A); 2) the Bureau of Prisons ("BOP") is actively evaluating inmates at FCI Elkton and elsewhere for potential home confinement and other relief, and is better positioned than individual courts to assess the multiple factors at issue in release determinations; and 3) to the extent the defendant asks this Court to transition him to home confinement outside the parameters of § 3582(c)(1)(A), this Court lacks authority to do so.  Furthermore, if the Court reaches the merits of the defendant's motion, he bears the burden of proving his release is warranted under § 3582(c)(1)(A) and U.S.S.G. § 1B1.13 after consideration of the § 3553 factors, including a showing that he is "not a danger to the safety of any other person or the

community." U.S.S.G. § 1B1.13(2). Even if the COVID-19 situation at Elkton were deemed extraordinary and compelling within § 1B1.13's meaning, given the egregious and dangerous nature of his offense conduct, the defendant cannot establish that his release is appropriate under the standards set forth in § 3582 and USSG § 1B1.13.

## BACKGROUND

On September 6, 2012, the defendant entered guilty pleas to Count One of an Information out of the Southern District of Ohio that charged him with coercion or enticement of a minor to engage in illegal sexual conduct, in violation of 18 U.S.C. § 2422(b), and Count One of an Indictment out of the Southern District of Indiana that charged him with Production of Child Pornography in violation of 18 U.S.C. § 2251. (Doc. #25, Minute Entry.) The Southern District of Indiana Indictment was transferred to this District pursuant to a Rule 20 Consent to Transfer Jurisdiction. (Doc. #21, Consent to Transfer.)

The charges against the defendant in both charging documents arose from an undercover investigation by a Task Force Officer ("TFO") assigned to the Franklin County Internet Crimes Against Children ("ICAC") Task Force. (PSR ¶¶ 13.) The undercover ("UC") TFO responded to an ad placed by the defendant on the Craigslist website, in which the defendant sought "taboo" and "[y]oung/boys" for sexual activity. (*Id.* ¶ 14; Doc. 37-1, Government's Sentencing Exhibit 1.) During the subsequent email and text message communications between the defendant and the UC, the defendant discussed sexual activity he engaged in with his 13-year-old god-son, described pornographic videos he had made involving that god-son, offered to trade "taboo pics and vids," and made plans to travel from Indiana to Columbus, Ohio to engage in sex acts with the UC's fictitious 11 and 14-year-old foster sons. (PSR ¶¶ 14-16; Docs. #37-2 & 37-2, Government Sentencing Exhibit 2.) When the defendant arrived in Columbus as planned, he was

arrested and found to possess a cellular phone and a laptop computer.  (PSR ¶ 18.)  Forensic examination of the devices revealed that the defendant had utilized the cell phone to take pornographic images of a 13-year-old male child that he had been babysitting at his home in Indianapolis.  (*Id.* ¶ 19.)  The images depicted the child sleeping, while the defendant stood over him exposing his nude, erect penis in front of the boy's face.  (*Id.*)  A search warrant executed on Yahoo! for the content of the defendant's email account indicated that the defendant had sent at least one of these images he produced to another person.  (*Id.* ¶ 22.)

During the preparation of the Pre-Sentence Investigation Report ("PSR") in advance of the defendant's sentencing, the defendant reported to the Probation Officer that he had been previously diagnosed with lung cancer in 2008 and was currently in remission.  (*Id.* ¶ 81.)  The Probation Officer was unable to obtain documentation of the lung cancer diagnosis or any other medical conditions that the defendant had reported.  (*Id.*)

The defendant's sentencing hearing was held on May 22, 2013.  (Doc. #35, Notice of Hearing.)  Despite recommendations from the government and the Probation Office for a 210-month sentence, the Court imposed a below-guideline sentence of 195 months of incarceration.[1] (Doc. #40, Judgment.)  The prison term was to be followed by a 10-year term of Supervised Release.  (*Id.*)

The defendant is currently serving his sentence at FCI Elkton in the Northern District of Ohio.  Not including any time that may be credited based on his pretrial detention, he has

---

[1] The PSR suggested that the defendant's guideline range was 235-293 months, based on a total offense level of 38 and criminal history category of I. (PSR, Sentencing Recommendation.)  The government essentially concurred in one of the defendant's objections to the guideline calculations in the PSR, and suggested that the proper guideline range should be 210 to 268 months.  (Doc. #37, Government's Sentencing Memo at 4.  Both the government and the Probation Officer recommended a term of 210 months of incarceration.  (*Id.*; PSR, Sentencing Recommendation.)

currently served approximately 90 months of his 195 month sentence, and is scheduled to be released from the custody of the BOP on April 7, 2026.  The defendant is 42 years old.

On April 29, 2020, the defendant filed a motion for compassionate release, in which he requests that the Court issue an order "both releasing him from the custody of the Bureau of Prisons (BOP) and allowing him to complete the balance of his 195 month sentence on home confinement."  (Doc. #44, Defendant's Motion.)  The defendant claims that he has met the exhaustion requirements under §3582(c)(1)(A); that his prior lung cancer diagnosis combined with COVID-19 issues at FCI Elkton constitute extraordinary and compelling reasons under USSG § 1B1.13; and his release is therefore warranted by § 3582(c)(1)(A).  For all of the reasons that follow, the defendant's contentions are without merit, and his motion should be denied.

## ANALYSIS AND ARGUMENT

**A.**    *The Court's Authority to Alter a Defendant's Sentence is Statutorily Limited.*

A judgment of conviction that includes a sentence of imprisonment is considered "final." 18 U.S.C. § 3582(b).  As a result, district courts have limited authority to modify terms of imprisonment and can only do so "in specified instances where Congress has expressly granted the court jurisdiction to do so."  *United States v. Blackwell*, 81 F. 3d 945, 947 (10th Cir. 1996) (citing *United States v. Caterino*, 29 F. 3d 1390, 1394 (9th Cir. 1994)).  *See also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances.").

One of those specific instances in which Congress has granted the courts limited authority to modify a sentence of imprisonment—compassionate release—allows sentencing

courts to "reduce the term of imprisonment" if the court finds that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Even the authority granted to courts under the compassionate release statute is not unfettered: courts may not consider a request for compassionate release without first allowing the BOP to weigh in on a prisoner's request or, in the alternative, upon some showing that the BOP has not timely acted upon a prisoner's request. The relevant statute states as follows:

> [T]he court, **upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden**, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable statements issued by the Sentencing Commission.

*Id.* (emphasis added).

Prior to 2018, the Court's discretion under the compassionate release statute was even more circumspect: prisoners could not seek judicial review of the BOP's authority to seek or not seek compassionate release on behalf of an inmate at all. *Crowe v. United States*, 430 F. App'x 484, 484 (6th Cir. 2011). It was only with enactment of the First Step Act in December of 2018 that prisoners could directly move a court for a sentencing reduction under § 3582(c)(1)(A). *See United States v. Handerhan*, 789 F. App'x 924, 925 (10th Cir. 2019) (per curiam) (citing First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, § 603(b)(1)).

Even after the amendments to § 3582 that the First Step Act created, an federal inmate seeking compassionate release must show that he has exhausted all administrative appeals of the BOP's decision to not file a motion for compassionate release on his behalf, or, in the

alternative, must wait until 30 days have passed without the BOP taking action on his request for such a motion.  *See, e.g.*, *United States v. Raia*, 954 F.3d 594 (3d Cir. 2020); *Guzman v. United States*, No. 3:10-CR-161, 2019 WL 1966106, at *2 (E.D. Tenn. May 2, 2019).  If a defendant fails to satisfy this administrative exhaustion requirement, a district court has no authority to grant compassionate release.  *Id*. (finding that when a defendant fails to satisfy exhaustion requirement, district court "lacks statutory authorization to modify defendant's sentence under § 3582(c)(1)(A)").  The burden falls on the defendant to show that he has exhausted his administrative remedies. *United States v. Williams*, No.15-cr-217-pp, 2020 WL 1915322, at *1-2 (E.D. Wis. Apr. 20, 2020)(where defendant failed to present the court with "proof that (a) he presented [his release request] to the BOP and was denied, and he then appealed that denial through the BOP appeals process, or (b) he presented it to his warden and thirty days passed without the warden taking any action" the court may not consider or grant the defendant's request).

If a defendant has made the requisite showing of exhaustion such that a court may properly reach the merits of his motion, he must also establish that a reduction is warranted: i.e., that an extraordinary and compelling reason warrants the reduction; that he is not a danger to the public; and that his release is consistent with the applicable factors under 18 U.S.C. § 3553(a).  18 U.S.C. § 3582(c)(1)(A)(i); USSG § 1B1.13.  In this case, the defendant has not met his burden in regards to the exhaustion requirement or on the merits.  His motion should be denied.

**B.**     ***This Court Does Not Have Authority to Grant the Defendant's Motion for Compassionate Release Because He Has Failed to Show Exhaustion of his Administrative Remedies.***

The Court "***may not*** modify a term of imprisonment" based on a defendant's motion under § 3582(c)(1)(A) until "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A) (emphasis added).   That restriction is mandatory and jurisdictional.  As the Third Circuit recently confirmed, where 30 days have not passed following presentation of a request to a warden, the statute "presents a glaring roadblock foreclosing compassionate release at this point." 954 F.3d 594, 597 (3d Cir. 2020). Courts may not ignore or excuse exhaustion requirements mandated by statute.  *Cf. Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (holding that mandatory language of Prison Litigation Reform Act's exhaustion requirement could not be excused, even based on special circumstances).

In his motion, the defendant has recognized that § 3582(c)(1)(A) contains an exhaustion requirement and claims he has satisfied that requirement because he submitted a request for compassionate release to his warden on April 20, 2020.  According to the defendant, his case manager informed him the following day that the BOP was not going to respond to his request. Although the defendant has attached to his motion the April 20, 2020 email he sent to the warden, he has provided no documentation or evidence, other than an unsworn claim in his motion, that the BOP has responded to the request that he submitted.  This bare-bones assertion is not a sufficient record on which the Court can determine that the defendant has exhausted his administrative remedies. *See United States v. Bolino*, No. 06-CR-0806, 2020 WL 32461, at * 2 (E.D.N.Y. Jan 2, 2020) ("The submission of a sufficient record to show exhaustion . . . is

fundamental to this Court's function in deciding a compassionate release motion."); *United States v. Davis*, No. 2:15-cr-20067-SHM, 2020 WL 6898676, at * 1 (W.D. Tenn. December 18, 2019) ("Davis does not submit any proof that he has exhausted his administrative rights with the BOP. The Court lacks the authority to consider his motion for compassionate release.").

The defendant submitted his request to the warden of his institution on April 20, 2020. He filed his motion with this Court nine days later on April 29, 2020, with nothing other than his own bare assertion regarding a BOP response. Clearly, 30 days have not passed since the defendant made his request to the BOP, and his instant submission is not sufficient for the Court to determine that the defendant has otherwise exhausted his administrative remedies. Allowing the defendant to proceed forward on such a bare record would hinder one of the main purposes of § 3582's requirement that an inmate first take his claim to the BOP. "Congress clearly wanted these applications decided at the administrative level if possible. It is therefore particularly important to at least give the BOP an opportunity to state its reason for denying the application so that the court can review those reasons." *Bolino*, 2020 WL 32461, at * 2.

As *Bolino* indicates, the statutory requirement that the BOP have the opportunity to address requests for compassionate release in the first instance serves important functions. The agency conducts an extensive assessment for all such requests. *See* 28 C.F.R. § 571.62(a); BOP Program Statement 5050.50, available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf. An inmate may appeal the warden's denial of compassionate release through the BOP's administrative remedies program. 28 C.F.R § 571.63(a). The BOP's review, based on its expertise concerning both the inmate and the conditions of confinement, will always be of value to the Court. That is certainly true during the present crisis, as the BOP is best positioned to assess the many relevant factors, including risks to

the defendant in his current placement, risks to the community from release, existence of an appropriate release plan, and needs for pre-release quarantine.

In this case, the defendant, while he has taken the first step in the administrative process, has failed to demonstrate that he has met the exhaustion requirements. This Court does not have authority to entertain his motion. His motion must therefore be denied, without prejudice to the defendant filing a later motion with this Court demonstrating satisfaction of the statutory exhaustion requirement.

**C.** ***The Court Should Defer to the BOP's Ongoing Effort to Maximize Home Confinement in Response to the COVID-19 Pandemic.***

As this Court and the government are well aware, COVID-19 is a dangerous illness that has caused many deaths in the United States in a short period of time and has resulted in massive disruption to our society and economy. In response to the ongoing pandemic, the BOP has taken significant measures to protect inmates. BOP has explained that "maintaining safety and security of [BOP] institutions is [BOP's] highest priority." BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement (Mar. 19, 2020), available at

https://www.bop.gov/resources/news/20200319_covid19_update.jsp. In particular, the agency's comprehensive effort to maximize home confinement in light of COVID-19 is the most appropriate forum for assessing and implementing the release of individual prisoners from incarceration.

On March 13, 2020, in accordance with its COVID-19 Action Plan, the BOP began to modify its operations to minimize the risk of COVID-19 transmission into and within its facilities. Since that time, the BOP has repeatedly revised the Action Plan to address the crisis. Beginning on April 1, 2020, the BOP implemented Phase Five of the Action Plan, which currently governs operations. The current plan requires that all inmates be secured in their assigned quarters for a period of at least 14 days to stop the spread of the disease. Only limited movement is afforded to facilitate commissary, laundry, showers, telephone, and computer

access. Further, the BOP has severely curtailed the movement of inmates and detainees among its facilities. Symptomatic inmates, and asymptomatic inmates with a risk of exposure, are placed in quarantine until cleared by medical staff. Social visits are suspended until at least May 18, 2020. *See* www.bop.gov/coronavirus.

In order to assist inmates who are most vulnerable to the virus and pose the least threat to the community, the BOP is also exercising greater authority to designate inmates for home confinement. On March 26, 2020, the Attorney General directed the BOP to prioritize transferring inmates to home confinement in appropriate circumstances when those inmates are vulnerable to COVID-19 under the CDC risk factors. A subsequent memorandum from the Attorney General on April 3, 2020, further directed the BOP to expand the range of inmates eligible for home confinement, as authorized by the CARES Act. *See* Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted March 27, 2020. That memorandum specifically instructed that priority be given to inmates of FCI Elkton and two other facilities experiencing significant cases of COVID-19. In assessing whether home confinement is appropriate for a particular inmate, the BOP weighs numerous factors, including the inmate's medical conditions, age, crime of conviction, and conduct while in prison; conditions in the inmate's particular institution; availability of post-release transportation, housing, and supervision for the inmate; and the inmate's risk from COVID-19 if released. Prior to releasing an inmate, the BOP is directed to implement a 14-day quarantine in order to protect the community.

The BOP is devoting all available resources to executing the Attorney General's directives, and is systematically assessing the inmate population to determine which prisoners are most appropriate for transfer. Since the issuance of the Attorney General's memorandum on March 26, 2020, the BOP has placed 2,023 inmates on home confinement. This represents a

70.9% increase in the use of this option. *See* www.bop.gov/coronavirus (last accessed on May 6, 2020).

The BOP's home confinement program provides a centralized, consistent mechanism for identifying prisoners for whom home confinement is most appropriate. The resulting reduction in prison population will in turn benefit all remaining inmates. Courts should hesitate to disrupt this systematic effort by granting compassionate release to prisoners who may be less deserving than others nationally, and without the capacity to conduct the comprehensive and consistent review that can be undertaken by the BOP.

Nothing about the preliminary injunction issued by the United States District Court for the Northern District of Ohio in connection with a class action lawsuit filed by inmates at Elkton, which the defendant cites to at length, changes either the forgoing analysis or the later-discussed issue of extraordinary and compelling reasons particular to the defendant. The United States acknowledges that FCI Elkton has several cases of COVID-19 among inmates and staff. However, neither that unfortunate situation nor the Northern District's order compel the Court to grant the defendant's motion. As an initial matter, the Warden has filed a notice of appeal regarding the preliminary injunction. *See Wilson v. Williams*, No. 4:20-cv-794 (N.D. Ohio April 27, 2020) (Doc. #26, Notice of Appeal.) Further, nothing in the preliminary injunction purports to determine that compassionate release or any other form of relief is appropriate to any particular prisoner, including the defendant in this case. Rather, the Northern District's order emphasized that the petitioners seek "varied relief that *allows the BOP to make individualized determination* as to where each subclass member should be placed," and further acknowledged that "in all instances such 'release' *could be temporary*." *Id.* (Doc. #22, Order Granting Preliminary Injunction at 14.) (emphasis added). As such, the

Northern District order highlights that: 1) consistent with the Attorney General's orders, the BOP is already actively considering release and transfer options for vulnerable inmates at FCI Elkton; and 2) the BOP, rather than individual courts, is positioned to do so, not only because of its expertise, but because it has a wider range of "permanent" and "temporary" options at its disposal - including home confinement, transfer to other facilities, and furlough - beyond the single permanent remedy of early release that the defendant now requests. *See id.* at 14, 20-21. Most notable to the Court's analysis in this case, the Northern District's Order required the BOP to provide a list identifying all FCI Elkton inmates "identified by the CDC as being at higher risk" of serious illness from COVID-19. *Id.* at 12, 20. The BOP filed the required list on April 30, 2020, and the defendant's name does not appear on it. *Id.* (Doc. #35, Notice of Identification of Inmates.) Thus, even if the COVID-19 related issues at FCI Elkton are somewhat worse than other BOP institutions (a suggestion that the government does not concede), Defendant Fisher is not a particularly vulnerable person.

**D.** ***The Defendant has not Demonstrated that he is Eligible for Release Under § 3582(c)(1)(A) and USSG § 1B1.13.***

Even if the defendant had exhausted his administrative remedies, his motion for a reduction in his sentence should be denied both because he has failed to demonstrate that there are "extraordinary and compelling reasons," as defined by § 3582(c)(1)(A) and USSG § 1B1.13, warranting such a reduction, and because he poses a significant danger to the public. Additionally, the statutory sentencing factors that the Court found warranted a sentence of 195 months, do not weigh in favor of the defendant's release. As such, his motion should be denied with prejudice.

1. <u>The COVID-19 pandemic does not, in and of itself, constitute extraordinary and compelling reasons for a sentence reduction.</u>

This Court may only reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the Court finds that "extraordinary and compelling reasons warrant such a reduction;" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress directed that the Sentencing Commission, not the judiciary, adopt policies regarding "what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(a)(2)(C) & (t). The policy adopted by the Sentencing Commission, found in USSG § 1B1.13, defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions. USSG § 1B1.13, cmt. n.1(A). Thus, in order for a defendant to state a cognizable basis for a sentence reduction based on a medical condition, he first must establish that his condition falls within one of the categories listed in the policy statement. Those categories include, as particularly relevant here, (i) any terminal illness, meaning a "serious and advanced illness with an end of life trajectory;" and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his or her motion must be denied.

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not fall into either of those categories and therefore could not alone provide a basis for a sentence reduction. The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire

population.  As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 2020 WL 1647922 at *2; *see also United States v. Eberhart,* No. 13-CR-00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A)."); *United States v. Wright*, No. 16-214-04, 2020 WL 1976828, at *5 (W.D. La. April 24, 2020) ("[T]he rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person.").  To classify COVID-19 as an extraordinary and compelling reason would not only be inconsistent with the text of the statute and the policy statement, but would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.  For the defendant, this means that he must show something particularized that distinguishes him from every other BOP inmate and places him at a significant risk of developing either a terminal illness or serious physical or medical conditions related to COVID-19.  He has failed to make such a showing.

The defendant asserts that there is an extraordinary and compelling reason to release him because of the "potential impact the pandemic could have on him given that he had lung cancer

in 2008 and was subjected to chemotherapy for between eight and nine months." (Doc. #44,

Defendant's Motion at 4.) Presuming that the defendant had submitted sufficient evidence to

establish that he was previously diagnosed with lung cancer—which is far from clear given that

there are no records anywhere in this case that document that claim—that would only establish

that he had a lung condition 12 years ago. He has submitted absolutely no medical evidence

indicating that he is currently at a higher risk of either contracting or suffering serious illness as a

result of COVID-19[2], and he has thus failed to meet his burden of establishing an extraordinary

and compelling reason for a sentence reduction. *See, e.g., United States v. Jones*, 836 F.3d 896,

899 (8th Cir. 2016) (noting that as movant, defendant bears burden of establishing entitlement to

sentence reduction); *United States v. Washington*, No. 14-CR-215 2020 WL 1969301 at *4

(W.D. NY April 24, 2020)(finding defendant's claim that he suffered from asthma, supported

only by an affirmation from his mother, "without any medical evidence or the opinion of a

physician," was insufficient to "conclude that COVID-19 poses 'increased lethality' to" the

defendant, even where the "conditions at Butner [where defendant was housed] are a cause for

concern"); *United States v. Crouch*, No. 5:19-CR-00029 2020 WL 1963781, at *2 (W.D. Ky.

April 23, 2020)(finding defendant failed to establish extraordinary and compelling reasons

warranting release, where he "has not provided any medical records indicating a lung infection

or any other factors that would make him at greater risk for the [COVID-19] virus"). For

purposes of determining the defendant's eligibility for a sentence reduction under §

3582(c)(1)(A) then, the Court must consider him to be a healthy individual, at no greater risk of

contracting or becoming seriously ill from COVID-19 than any other inmate. In such

---

[2] As indicated above, given that the defendant was not included in the list that the Elkton Warden filed in the *Wilson v. Williams* case to document those Elkton inmates that qualified as particularly vulnerable under CDC guidelines, the government doubts that the defendant could make such a showing, even if he had submitted his medical records.

circumstances, "[t]he existence of the pandemic and its impact on those who are incarcerated," (Doc. #44, Defendant's Motion at 4), is *not*, in and of itself, an extraordinary and compelling reason warranting a sentence reduction.  *See United States v. Binraymond*, No. 2:19-cr-196, 2020 WL 2110577, at *2 (S.D. Ohio May 4, 2020) (Defendant, who was 47 years old and claimed to have high blood pressure, "failed to show that COVID-19 poses a particular risk to him sufficient to constitute extraordinary and compelling circumstances").

While the defendant attempts to get around the requirement that he identify a particular medical condition that makes him more susceptible to COVID-19 by asserting that he is not bringing his extraordinary and compelling claim under the terminal illness or medical/health condition prongs of § 1B1.13, but rather under the "catch-all" provision outlined in § 1B1.13, Application Note 1(D), his claim must fail all the same.  As an initial matter, it is not even clear that the Court can, without a finding by the Director of the BOP, independently determine that a circumstance other than those listed in § 1B1.13, Application Note 1(A) – (C) constitutes an extraordinary and compelling reason.  The "catch-all" provision found in Application Note 1(D) requires that the "Director of the Bureau of Prisons" find that there exists "an extraordinary and compelling reason other than" the reasons specifically delineated within the application notes to § 1B1.13.  U.S.S.G. § 1B1.13, Commentary, Application Note 1(D).  The BOP Director has made no such finding here, nor is it likely that he would, as a finding that this defendant's circumstances provide an extraordinary and compelling reason would mean that the same is true for all other inmates.  Such a proposition is untenable under any section of the § 1B1.13 commentary.  *See Wright*, 2020 WL 1976828, at *5 ("The Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every

16

prisoner."). The defendant has failed to establish any extraordinary or compelling reason warranting his release or sentence reduction, and his motion should therefore be denied.

2. Relief is unwarranted considering the factors set forth in 18 U.S.C. § 3553(a) and the danger the defendant poses to others.

Even if the defendant were able to demonstrate that the COVID-19 pandemic presented a particularly "extraordinary and compelling reason" in regards to him, his release is not appropriate upon consideration of the other factors identified by the Sentencing Commission. Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Similarly, the existence of an extraordinary and compelling reason for release does not entitle a defendant to release if the applicable § 3553(a) factors militate against release. *See* § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020)(upholding district court's denial of compassionate release motion, where defendant was diagnosed with terminal illness constituting an extraordinary and compelling reason for release, but serious nature of defendant's offense, lengthy and violent criminal history, and service of less than half the originally-imposed sentence weighed against release). Here, the defendant remains a danger to the community and the most relevant § 3553(a) factors prevent his release.

As the government discussed at length in its sentencing memo, the exacerbated nature of the defendant's offense conduct made him a significant danger to the most vulnerable members of society. (*See* Doc. #37, Government's Sentencing Memo at 6-8.) The defendant abused a position of trust as a baby-sitter to a young boy, created pornographic images of the boy, and then sent those images to other similar-minded pedophiles on the internet. His actions may have caused that innocent boy a lifetime of trauma if the images the defendant created continue to travel in an ever-widening circle on the internet. And his conduct was not limited to that one

child to which he had easy access.  The investigation revealed that the defendant had numerous

conversations with other individuals about the potential of sexually abusing children,

culminating in his communications with the undercover officer.  Notably, the defendant did not

just chat with the undercover officer about the possibility of sex with the UC's children; he

travelled across state lines in order to engage in such conduct.  In light of such serious,

dangerous, and violent criminal acts, the defendant's lack of criminal history or claimed lack of

disciplinary actions while incarcerated are of minimal significance.

The need for the sentence to reflect the seriousness of the offense, afford adequate

deterrence, and protect the public similarly cuts against relief.  *See* 18 U.S.C. § 3553(a)(2).

Considering these factors, this Court sentenced the defendant to a 195-month term of

imprisonment.  To date, he has served approximately 90 months.  Reducing the sentence imposed

by more than one half could hardly be seen to address these important statutory purposes of

sentencing.  *See United States v. Smith*, No. 3:16-cr-48 2020 WL 1903160 at, *4 (D. Ct. April 17,

2020) (finding 50-months that defendant convicted of offense under 18 U.S.C. 2422(b) served

would not "adequately reflect the seriousness of the defendant's offense, promote respect for the

law, provide adequate deterrence to the defendant and others, or, as noted, protect the public

from defendant" where defendant was originally sentenced to 146-month sentence).  *See also*

*United States v. Hahn*, No. 08-95 (MJD) 2020 WL 980185 at, *3 (D. Minn. February 28,

2020)("Because the risk of recidivism is high among sex offenders, and in particular pedophiles,

the public safety factor warrants that Defendant's motion be denied.").

For many of the same reasons that the 3553(a) factors prevent the Court from granting

the defendant's motion, he also cannot be released because he has failed to show that he "is not a

danger to the safety of any other person or to the community," USSG § 1B1.13(2), which

independently precludes relief. The defendant asserts that he has met this condition because he has demonstrated while he has been incarcerated that "he is prepared to comply with court orders and the terms of his supervised release." (Doc. #44, Defendant's Motion at 10.) Even if the defendant had provided some evidence of his compliance with institutional rules, that is hardly a reason to determine that he is no longer a danger or that continued incarceration is not warranted. *See United States v. Weintraub,* 371 F.Supp.2d 164, 166-167 (D. Conn. 2005) ("Model prison conduct and full compliance with the terms of supervised release is what is expected of [a] defendant and all others serving terms of imprisonment, and does not warrant early termination."). Importantly, the defendant does not claim that he has completed *any* type of sex offender treatment that *might* give the Court some reason to believe that he has tools to potentially help him refrain from committing similar offenses if released. Nor does the defendant provide the Court with any information suggesting how his proposed plan of living with his elderly grandmother might give the Court reason to believe that the defendant could be sufficiently supervised to mitigate the danger he poses. Given the nature of the defendant's prior offense conduct, a condition of home confinement is hardly any sort of assurance that he will not engage in similar conduct if released.[3]

The Court found that a sentence of 195 months was necessary in light of all of the § 3553(a) factors, including protection of the public. Nothing that the defendant has presented to

---

[3] As numerous courts have found in the pre-trial detention context, monitoring of those who commit their offenses via computer and the internet are particularly difficult to monitor. *See e.g. United States v. Brown*, No. CR2-08-106, 2008 WL 2098070, at *5 (S.D. Ohio May 16, 2008) ("[E]ven electronic monitoring and home detention do not adequately address Brown's ability to access phones or computers in his mother's home even if steps were taken to try to prevent those items from being present or available in the house. In this day and age, with devices such as cellular phones, Blackberries, and laptops, there are no conditions that can reasonably assure the safety of the community under the particular circumstances of this case if Brown is released on bail."); *United States v. Sammons*, No. 2:19-CR-107, 2020 WL 613930 at * 6 (S.D. Ohio February 10, 2020) ("While Mr. Sammons insists that he would be without any internet access if released, there would be no real mechanism to enforce or police this, and the Court would need to rely on Mr. Sammons's promises to abstain. The Court is not willing to depend on Mr. Sammons's good faith, particularly given the concerning allegations present here.").

the Court changes the analysis of those factors or the danger that the defendant poses to the public. Regardless of all other issues discussed herein, the defendant's motion must be denied with prejudice based on the defendant's dangerousness.

**E.** ***The Court Has No Authority to Direct the BOP to Place Mr. Pryor in Home Confinement.***

The defendant has asked that the court both release him from custody of the BOP and allow him to complete the balance of his sentence on home confinement. It is well-established that a district court lacks the authority to determine where an inmate is confined. Instead, under federal law, "[t]he Bureau of Prisons shall designate the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b). Courts have repeatedly stated that the BOP alone has this authority. *See*, *e.g.*, *United States v. Townsend*, 631 Fed. App'x 373, 378 (6th Cir. 2015) ("The BOP, not the court, is responsible for designating the place of a prisoner's imprisonment."); *United States v. Jalili*, 925 F.2d 889, 892 (6th Cir. 1991) ("Section 3621(b) gives the Bureau of Prisons the power to designate the place of confinement for anyone sentenced to a term of imprisonment."); *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) ("While a district court judge has wide discretion in determining the length and type of sentence, the court has no jurisdiction to select the place where the sentence will be served. Authority to determine place of confinement resides in the executive branch of government and is delegated to the Bureau of Prisons.") (citation omitted). In short, the BOP "has the sole discretionary authority to designate an inmate's federal place of imprisonment." *Baldwin v. Warden, Madison Corr. Inst.*, No. 1:17-CV-686, 2018 U.S. Dist. LEXIS 131725, at *5 (S.D. Ohio. Aug. 6, 2018).

Courts have repeatedly ruled that the outbreak of COVID-19 does nothing to change this analysis. Even during the pandemic, this Court is not empowered to order the BOP to transfer the defendant to home confinement. Instead, "the authority to make this determination is

squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons."

*United States v. Doshi*, No. 13-CR-20349, 2020 U.S. Dist. LEXIS 55572, at *2 (E.D. Mich. Mar.

31, 2020); *see Dougherty*, 2020 U.S. Dist. LEXIS 68725, at *5 ("It is the Bureau of Prisons, not

this court, which has the authority to designate the place of a prisoner's confinement."); *Miller v.*

*United States*, No. 16-20222-1, 2020 U.S. Dist. LEXIS 62421, at *4 (E.D. Mich. Apr. 9, 2020)

("[T]his Court and others have recognized that the authority to place a prisoner in home

confinement is given to the BOP, through Attorney General delegation[.]").[4]  Accordingly, the

defendant's request for home confinement should be denied.

## **CONCLUSION**

For all the reasons discussed above, the defendant's motion for release should be denied.

If this Court decides to order release, however, it should first require a fourteen-day quarantine,

and ensure that an appropriate release plan is in place.

Respectfully submitted,

DAVID M. DEVILLERS
United States Attorney

s/*Heather A. Hill*
HEATHER A. HILL (6291633)
Assistant United States Attorney
303 Marconi Boulevard
Suite 200
Columbus, Ohio 43215
(614) 469-5715
Fax: (614) 469-5653
Heather.Hill @usdoj.gov

---

[4] At most, the Court could make a non-binding recommendation to the BOP.  In this case, the Court should not issue such a recommendation, but instead should defer to the BOP's institutional knowledge and expertise regarding the defendant's medical condition, the conditions at the facility at which he is being housed, and "decisions as to which prisoners should be released because of the COVID-19 epidemic."  *United States v. Garza*, No. 18-CR-1745, 2020 U.S. Dist. LEXIS 54228, at *3-4 (S.D. Cal. Mar. 27, 2020) (denying defendant's motion for immediate release due to COVID-19 and refusing to recommend that BOP move defendant to home confinement).

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Response was served electronically, this 6th day of

May, 2020, on Steven S. Nolder, counsel for the defendant.

*s/Heather A. Hill*
HEATHER A. HILL (6291633)
Assistant United States Attorney