1

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF OHIO
2         EASTERN DIVISION

3

4    UNITED STATES OF AMERICA,)
                             )
5      PLAINTIFF,            )    CASE NO. 2:12-CR-162
                             )
6           vs.              )
                             )
7    TONY R. FISHER,         )
                             )
8      DEFENDANT.            )
     _____)

9

10        TRANSCRIPT OF PROCEEDINGS OF A SENTENCING HEARING
             BEFORE THE HONORABLE GEORGE C. SMITH
11           WEDNESDAY, MAY 22, 2013; 1:30 P.M.
                   COLUMBUS, OHIO

12

13    FOR THE PLAINTIFF:
      US ATTORNEY'S OFFICE
14    By:  HEATHER HILL, ESQ.
      303 MARCONI BOULEVARD, 2ND FLOOR
15    COLUMBUS, OH 43215

16

17    FOR THE DEFENDANT:
      By:  SAMUEL WEINER, ESQ.
18                        – – –

19      Proceedings recorded by mechanical stenography, transcript
      produced by computer.

20

21

22

23              GEORGINA L. WELLS
           FEDERAL OFFICIAL COURT REPORTER
24          85 MARCONI BOULEVARD, ROOM 121
               COLUMBUS, OHIO 43215

25

2

1          Wednesday Afternoon Session,

2          May 22, 2013.

3                     - - -

4          COURTROOM DEPUTY CLERK:  The Court calls Tony R.

5    Fisher.  The defendant and defendant's counsel please come to

6    the podium

7          THE COURT:  Mr. Weiner, how are you?

8          MR. WEINER:  I am good, Your Honor.  And you?

9          THE COURT:  Good.  Ms. Hill, I haven't seen you for

10   awhile, have I?

11         MS. HILL:  It has been awhile.

12         THE COURT:  Nice to see you here.

13         MS. HILL:  You as well.

14         THE COURT:  The lady from Indiana is not going to be

15   here?

16         MS. HILL:  No, Your Honor.  I will be representing

17   the United States in this case.

18         THE COURT:  Okay.  We are here on the Sentencing

19   Hearing of defendant Tony Fisher.  I want counsel to know

20   that I have reviewed your memoranda as well as the other

21   exhibits, including the report from Dr. Reardon.  I will

22   summarize your arguments, but if you still want to highlight

23   some of those documents you have provided or present any

24   testimony, please let me know when we get to the mitigation

25   phase.

3

1        Mr. Weiner, have you and your client read and

2    discussed the Presentence Report prepared by the U.S.

3    Probation Office?

4        MR. WEINER:  We have, Your Honor.

5        THE COURT:  And Mr. Fisher, do you recall reviewing

6    the Presentence Report with your attorney?

7        THE DEFENDANT:  Yes, Your Honor.

8        THE COURT:  And do you, Mr. Fisher, do you

9    understand everything that you and your attorney have

10   discussed regarding the Presentence Report?

11       THE DEFENDANT:  Yes, Your Honor.

12       THE COURT:  And is there anything about the report,

13   Mr. Fisher, that you do not understand?

14       THE DEFENDANT:  No, Your Honor.

15       THE COURT:  And Mr. Weiner, do you have any doubt as

16   to your client's understanding of the Presentence Report?

17       MR. WEINER:  I do not, Your Honor.

18       THE COURT:  And counsel, for both the government and

19   the defendant, are there any facts reported in the

20   Presentence Report disputed by the defendant or the

21   government?

22       MS. HILL:  The government has no factual dispute

23   with the PSR, Your Honor.

24       MR. WEINER:  Other than the issues raised in our

25   objections, Your Honor, no.

4

1    THE COURT: All right. There being no objections to

2 the factual statement contained in the Presentence Report,

3 the Court adopts those statements as its findings of fact.

4 The defendant has entered a valid plea to Count 1 of the

5 Information in Ohio, charging him with coercion and

6 enticement, in violation of 18 United States Code, Section

7 2422(b); and to Count 1 of the Indictment in Indiana,

8 production of child pornography, in violation of 18 United

9 States Code, Section 2251(a). Accordingly, the defendant is

10 adjudged guilty of these charges.

11    The defendant has raised several objections, some of

12 which have been resolved. The Presentence Report addresses

13 Objections 1, 2 and 4 together. Defendant objects to any

14 enhancement in the Presentence Report that arise from the

15 age of the victims, specifically Paragraphs 32, 38 and 39.

16 Defendant asserts that the government has engaged in, quote,

17 sentencing entrapment, end quote, in order to be able to

18 apply the guidelines. Defendant argues that the tapes and

19 the emails show that the agent put forth the ages of the

20 alleged minor children.

21    Additionally, defendant objects to the "double dipping"

22 of enhancements for alleged enticement of minors when neither

23 of the minors existed and the only enticement occurred

24 through an email with the government agent.

25    Finally, defendant objects to the application of the

1    multiple count grouping adjustment because of the calculation

2    of three separate counts.

3          The government agrees that the guidelines have been

4    correctly calculated, but given the circumstances of this

5    case and the ambiguity of Special Instruction Section

6    2G1.3(d) as it relates to fictitious minors, the government

7    does not believe that multiple counts for each of the

8    fictitious minors are appropriate.  Therefore, the government

9    believes that the appropriate total offense level should be

10   37.

11         The government also notes that the defendant attempted

12   to entice or coerce both of the fictitious children, having

13   full knowledge of their ages, but suggests the Court use its

14   discretion in considering how ages were inserted into the

15   conversation.

16         And that concludes the summary that the Court has

17   prepared for this.  And I will ask if, first of all,

18   Mr. Weiner, are there any further discussion on the

19   objections?

20         MR. WEINER:  Your Honor, I would rest on my written

21   objection, but I would simply add, just by point of

22   clarification, that we are not only objecting to the fact

23   that the two children counts were on fictitious children, but

24   we also object, and I believe the Court has indicated, that

25   the calculation for the multiple count enhancements was also

6

1    affected by that, by those two separate counts, and we object

2    to that calculation, also, Your Honor.

3            THE COURT:  And Ms. Hill?

4            MS. HILL:  Yes, Your Honor.  As the Court indicated,

5    the government does -- we neither concur or disagree with

6    defense counsel.  We think that the guidelines as it relates

7    to multiple count grouping rules, that Special Instruction

8    2G1.3(d)(1) is ambiguous.  And so, the calculation that we

9    have presented to the Court simply does not take that

10   multiple count enhancement into consideration.  We believe

11   under the circumstances of this case, which I have seen come

12   up a number of times, where under the particular

13   circumstances that we have in this case, we do not believe

14   that it is appropriate to apply that multiple count

15   enhancement or the multiple count grouping rules.

16           We do maintain our position that the enhancement

17   related to the ages of the two fictitious children are

18   properly applied per the instructions of the guidelines.  The

19   ages of the children were established.  Yes, they were

20   established by the undercover law enforcement agents, but

21   that was in response to a question from the defendant of "How

22   old are the children?"

23           And as I believe it is clear in all of the exhibits

24   that the government has attached to its Sentencing

25   Memorandum, the defendant showed absolutely no hesitation in

1  expressing an interest to engage in sexual activity with the

2  children, upon learning their ages.  And under those facts,

3  we do not believe this was sentencing entrapment.  And I am

4  not sure that I understand the "double dipping" issue, but we

5  don't believe that that is an issue here either.  And we do

6  believe that those enhancements related to the ages of the

7  fictitious minors are properly applied in this case.

8         THE COURT:  Are what?

9         MS. HILL:  Properly applied in this case.

10         THE COURT:  Do you have any response, Mr. Weiner, to

11  what Ms. Hill has just said?

12         MR. WEINER:  Your Honor, as she indicated, were it

13  not for the conduct of the government in putting the ages of

14  the children into play, we probably wouldn't be here today on

15  these two counts anyway.  The issue, even though the Court

16  may not find it a legal issue, would certainly be -- should

17  be considered, I think, will be considered by the Court in

18  mitigation when it comes to imposition of sentence in this

19  matter, Your Honor.  Thank you.

20         THE COURT:  The Court finds that both the fictitious

21  children -- which were part of the conversation here -- are

22  appropriately considered victims, and the age enhancement is

23  properly applied, regardless of who initially raised the

24  ages of the fictitious children.  Defendant's intent to meet

25  up with the 11 and 14 year old boys was clear.  And had the

1    defendant only noted an interest in one of the boys or

2    mentioned only the 14 year old boy, this would be a

3    different case.

4          Nonetheless, the Court acknowledges the defendant's

5    argument and the information from the government and will

6    reduce the defendant's offense level from a 38 to a 37,

7    combined with Criminal History of I.  The defendant's

8    advisory guideline range is 210 to 262 months.

9          Additionally, with respect to the defendant's

10   sentencing entrapment argument, the Court will consider the

11   argument in determining the appropriate sentence.

12         Both the defendant and the government have filed

13   sentencing memorandum.  The defendant requests a downward

14   departure from the advisory sentencing guideline to the

15   mandatory minimum sentences to run concurrently.  The

16   defendant acknowledges the severity of his offenses but also

17   asserts that he has no criminal history.  He asserts that he

18   was a good student, a hard worker.  And he suffers from

19   emotional and psychological issues.  The defendant

20   references the report prepared by Dr. Reardon, which the

21   Court has reviewed.  The Court also notes defendant's other

22   health issues, including cancer and alcohol and drug abuse.

23         The defendant further argues that any period of

24   incarceration would be just punishment and a lengthy period

25   would not serve any purpose.  He again references

1    Dr. Reardon's report indicating that the defendant is a low

2    risk for recidivism.  Defendant asserts that the mandatory

3    minimum sentence is sufficient to serve as an adequate

4    deterrent and to protect the public.

5         Defendant requests that he receive treatment for

6    emotional and physical issues, as well as substance abuse

7    treatment while incarcerated.  He also requests the Court

8    recommend that he serve his sentence at an FCI, as opposed to

9    a USP.

10        Mr. Weiner, would you like to expand on any of these

11   arguments from your sentencing memo that I have summarized?

12        MR. WEINER:  Just briefly, Your Honor.  The place

13   that -- the site of placement that we would request would be

14   Elkton, FCI Elkton here in Ohio.  I think it has everything

15   that Tony will need to help him get through this time in his

16   life.  It has got the RDAP program.  It has got counseling,

17   and it has got a medical facility, which, hopefully, will

18   cover his myriad of issues.  I would also ask that the Court

19   recommend that Tony at the appropriate time during his

20   sentence be allowed to enter into the RDAP program and that

21   he receive any type of counseling that would be appropriate

22   or would be deemed appropriate after an evaluation at the

23   site of his confinement.

24        THE COURT:  Thank you.  The government has also

25   filed a sentencing memorandum asserting a downward

1   departure -- asserting a downward departure is not warranted

2   and concurs with the calculations and recommendation of the

3   Probation Officer.  The government's discussion of the

4   3553(a) factors highlights the severity of the crime,

5   acknowledging that although the defendant did not actually

6   touch a child, his offense is far more severe than the

7   average viewer of child pornography.  The defendant abused a

8   position of trust as a babysitter and mentor of a 14 year old

9   boy to create pornographic images that are now on the

10  internet.  Further, there is no question from the e-mails and

11  text messages that the defendant planned to meet up with the

12  father and two boys to engage in sexual acts.

13      The government concedes that many of the issues that

14  the defendant has raised may be mitigating factors in

15  determining a sentence, but argues that these factors do not

16  excuse his heinous criminal acts.  The government references

17  U.S. v. Cunningham, in which the Sixth Circuit affirmed the

18  district court's determination that psychological evaluation

19  deserved little weight, stating, quote, defendant's personal

20  history and psychological conditions do not set him apart

21  from many other individuals who suffer from the same trials

22  and yet do not resort to child pornography.

23      Accordingly, the government asserts that a sentence

24  of 210 months, at the bottom of the advisory guideline

25  range, will accomplish the statutory purposes of Section

11

1    3553(a).

2         Ms. Hill, I have reviewed your memo, as well as the

3    email and text records.  Would you like to add anything

4    additional to your argument or respond to any of the

5    defendant's arguments?

6         MS. HILL:  Your Honor, I will be brief.  We would

7    join in the recommendation for a placement at Elkton.  I have

8    handled a number of these cases, and I believe that's the

9    closest place to Columbus and to the defendant's family and

10   so forth that has the sexual offender treatment program, and

11   as Mr. Weiner indicated, also, the RDAP program.

12        I want to clarify just a couple of things briefly.

13   The government understands that this is a difficult case.

14   That the defendant here has had a very difficult life.

15   Clearly, no one can read through the PSR, the sentencing

16   memorandum and the report of Dr. Reardon and come to any

17   other conclusion.  And the government is sympathetic to that.

18   And I don't mean in my sentencing memorandum to at all

19   indicate that we believe that he is just a typical

20   run-of-the-mill person who has daily trials and tribulations

21   of a normal person.  Yes, it is one of the more aggravated

22   set of circumstances as far as the personal history that I

23   have seen.  It is not the worst.  Unfortunately, I have seen

24   worse.  I have also seen worse offenses.  You know, we are

25   not asking for the maximum in this case.  We believe the

12

1    sentence we are asking for is the low end of a guidelines

2    range that we are, you know, we have asked for to be

3    actually lower than that found by the Probation Officer.  We

4    believe that that low end of the guideline range

5    appropriately balances the life that the defendant has lived

6    in his trials and tribulations, and it is a heinous offense

7    that he has committed, that he abused the trust of that young

8    boy and that young boy's family.  And not only that, but his

9    then attempt to do that yet again when he came here to

10   Columbus to engage in sex with two young boys.  The nature of

11   that act, Your Honor, we just do not believe that that

12   balancing of those two factors warrants the downward

13   deviation from the guideline range, and that's why we are

14   asking for the bottom of the guidelines range.  Thank you.

15            THE COURT:  Thank you, Ms. Hill.  After going over

16   all of the arguments that have been made, both before and

17   here at this hearing, I am to say the least deeply disturbed

18   by the emails and text messages, and although I have

19   acknowledged the defendant's lack of criminal history, his

20   work record and emotional and health-related issues, as well

21   as the detailed report prepared by Dr. Reardon.  Dr. Reardon

22   has opined that the defendant has a low likelihood of

23   recidivism, which suggests a long sentence consisting of

24   concurrent sentences, is not justified.  Based on all of the

25   defendant's arguments, the Court will sentence the defendant

13

1  slightly below the advisory guideline range, but due to the

2  serious nature of this offense, a sentence above the

3  mandatory minimum sentence is justified.  The defendant must

4  be removed from society for a significant period of time just

5  to protect society, and those people that might become

6  victims.

7       And the sentence will be above the mandatory minimum.

8  Although the defendant did not actually harm a child, the

9  Court believes that he intended to, and he presents a very

10 serious danger to the community.  Do you have any additional

11 comments on this matter, Ms. Hill?

12      MS. HILL:  No, Your Honor.

13      THE COURT:  Mr. Weiner, anything?  You may speak in

14 mitigation.

15      MR. WEINER:  I would like for Tony's grandmother,

16 parents and his brother to speak to the Court, if I would be

17 allowed?

18      THE COURT:  Certainly.  Please come forward to the

19 rail so at least I can hear them.

20      THE WITNESS:  My name is Gwen Fisher, F-I-S-H-E-R.

21      I'm his maternal grandmother.  And, of course, I have

22 known him all his life.  And Tony and I have a very good

23 rapport.  And he is definitely a very, very kind, gentle -- I

24 can't give enough adjectives to describe my grandson.  But we

25 have spent a lot of time together.  We have gone on vacations

14

1    throughout this country.  And he has always been concerned

2    about the children around him.  And he has been concerned

3    about the elderly around him, making sure that they were

4    always in front of him or being taken care of.  He loves to

5    go to church.  He has been a leader with the young people in

6    the church.  He loves to talk to the elderly people.  And the

7    best thing that Tony and I have together is we are fanatics

8    about family history.  We go to cemeteries; we go to

9    historical societies; we go to genealogical societies; we go

10   to libraries.  We love to walk the cemeteries to find all

11   the people who have gone on before us.  And it is something

12   that I really miss with my Tony because he was always there

13   and always kind and whatever.  So, I am going to miss him,

14   and he is a wonderful young man.  Thank you.

15            THE COURT:  Thank you.

16            THE WITNESS:  Shane Fisher, I'm his brother,

17   F-I-S-H-E-R.

18        We have been very close, we have been the best of

19   friends since we were young.  He has always gone above and

20   beyond.  His energy when he walks into a room seems to

21   reflect off of everybody else.  So, it is just so out of

22   character.  Thank you.

23            THE COURT:  Thank you for coming down, Mr. Fisher.

24            THE WITNESS:  My name is Lynn Fisher, I am Tony's

25   mother.  This is one of the hardest things I have ever had to

15

1    do in my whole life.  Tony --

2          THE COURT:  It is all right.  Take your time.

3          THE WITNESS:  He is one of the most loving people

4    that I know of.  He likes to make people happy.  He enjoys

5    being around elderly people.  He likes children.  He loves

6    animals.  As a matter of fact, he really misses his dog

7    Bandit.  Unfortunately, his brother has taken over those

8    responsibilities of taking care of his dog for him.  He is

9    not the monster that has been portrayed here today.  That

10   just kills me, and I know it does him too because he knows he

11   is not that monster either.  I'm just hoping we can all get

12   past this, our lives will never be the same, but I know he

13   understands what he has done.  Hopefully, it will all come

14   out being okay in the end.  Thank you.

15         THE COURT:  Thank you.

16         THE WITNESS:  Chris Fisher, F-I-S-H-E-R.  I am

17   Tony's dad.  Tony was always a very active and good child.

18   He followed instructions.  He was easy to discipline.  You

19   know, he never questioned any of the things that I tried to

20   do with him as far as correcting him.  I could talk to him.

21   He was never -- any strict punishment or anything.  Like

22   everyone else says, he lights up a room when he comes in.  A

23   lot of people like him.  They look forward to seeing him.

24   Just an all around good person.  This incident here is

25   totally out of character for anything we have ever seen of

16

1   Tony.  That's about all that I have.

2         THE COURT:  Thank you very much.  Mr. Fisher, it is

3   now your turn, if you want to say anything, you may certainly

4   do so.

5         THE DEFENDANT:  Ever since I was little, my family

6   has done nothing but positive things in my life.  I never

7   would have thought that I would have done anything -- even

8   speed law, break speed limit.  And it is hard for me to

9   fathom that I am here today, going through this entire

10  experience.  It is like I am portraying another person's life

11  in a movie.  I have never felt such sorrow for anything in my

12  life or for anybody.  I never meant to hurt anybody.  I am

13  ashamed and embarrassed that I have to be here.  I am

14  extremely sorry to my family and anybody that I hurt.  I

15  didn't mean to hurt anybody.  I am extremely sorry that I

16  have to be here today.  I know one day my family will

17  completely forgive me, and I know God will, too.  But I don't

18  think that I will ever be able to forgive myself.  That's it.

19        MR. WEINER:  That's it, Judge.

20        THE COURT:  Thank you for your statement,

21  Mr. Fisher.  The Court acknowledges the difficulties that you

22  have had and acknowledges and compliments your family on the

23  strong support and that will -- from this day forward, that's

24  what hopefully will -- the system, the incarceration system,

25  you and your family and your other friends and loved ones

17

1   must concentrate on getting you well. Do you understand

2   that?

3           THE DEFENDANT: Yes, sir, Your Honor.

4           THE COURT: And I am sure you understand the

5   difficulties that you find yourself in and others find

6   yourselves in. This is one of the most difficult types of

7   cases that the courts have to deal with. And there is a

8   plethora of cases like this where people stand right where

9   you are standing, in other courtrooms across this land, and

10  have to take the punishment and retribution for your

11  activities and for the protection of society, particularly

12  children, in our society. So, I hope you can understand that

13  this is why this has to happen this way. But I hope, and

14  even pray, that you will -- with this strong family support,

15  which not everyone has when they come in here, the strong

16  family support will help you accomplish this and put you at

17  peace.

18        Are there any issues, counsel, including 3553

19  sentencing factors that should be addressed on Mr. Fisher's

20  case that I have not discussed? Or you have not discussed?

21          MS. HILL: I do not believe so, Your Honor.

22          MR. WEINER: I think my sentencing memorandum spoke

23  to them all, Your Honor.

24          THE COURT: Right. The Court acknowledges those.

25          Pursuant to Sentencing Reform Act of 1984 and 18

18

1    United States Code, Section 3553(a), it is the judgment of

2    the Court that the defendant, Tony R. Fisher, is hereby

3    committed to the custody of the United States Bureau of

4    Prisons to be imprisoned for a term of 120 months on Count 1

5    of the Ohio case and 195 months on Count 1 of the Indiana

6    case to be served concurrently.

7         Upon release from imprisonment, the defendant shall

8    serve a term of supervised release of 10 years.  Within 72

9    hours of release from the custody of the Bureau of Prisons,

10   the defendant shall report to the Probation Office in the

11   district to which he is released.

12        While on supervised release, the defendant shall not

13   commit any federal, state or local crimes.  He shall be

14   prohibited from possessing a firearm or other dangerous

15   device.  The defendant shall not unlawfully possess or use a

16   controlled substance and submit to a drug test within 15 days

17   of release on supervised release and at least two periodic

18   drug tests thereafter.  The defendant shall submit to the

19   collection of a sample of his DNA as directed by the

20   Probation Officer or designee of the Bureau of Prisons.  The

21   defendant shall comply with the standard conditions of

22   supervised release as adopted by this court.  The Court will

23   also impose special conditions of supervised release.

24        Now, Mr. Fisher, do you remember going over the

25   recommended special conditions of supervised release outlined

19

1    in Paragraphs 1 through 6 on the final pages of the

2    Presentence Report, such as registering as a sex offender and

3    installation of monitoring software on your computer?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Do you understand all of these?

6              THE DEFENDANT:  Yes, Your Honor, I do.

7              THE COURT:  Rather than me read them, I'm relying

8    on your memory and the fact that your lawyer has them, and

9    you have seen them.

10         The Court therefore adopts those special conditions

11   of supervised release as its own, and they shall be set forth

12   in detail in the Judgment and Commitment Order.

13         The Court finds the defendant does not have the

14   ability to pay a fine.  The defendant is ordered to pay a

15   special assessment in the amount of $200, which shall be due

16   immediately.

17         The Court orders that the property specifically

18   described in Forfeiture A of both the Ohio and Indiana cases

19   be forfeited to the United States in accordance with the plea

20   agreement.

21         Additionally, the Court recommends that the defendant

22   serve his time in one of the Bureau of Prisons sex offender

23   treatment programs, and if Elkton is one of those, the Court

24   will recommend it.

25         And I understand that that is correct, right,

20

1    Ms. Hill?

2              MS. HILL:  Yes, Your Honor.

3              THE COURT:  Further, the Court recommends the

4    defendant receive all of the necessary medical treatment

5    while incarcerated, and also, the appropriate substance abuse

6    treatment, including the RDAP program.

7              As justification for this sentence, Tony Fisher is

8    before the Court after pleading guilty to coercion and

9    enticement and production of child pornography.  Defendant

10   intended to engage in sexual acts with what he believed were

11   two boys, ages 14 and 11.  Additionally, his computer had

12   nine images of child pornography, which included a child that

13   the defendant had mentored.

14             The sentence imposed is consistent with the United

15   States v. Booker decision, which effectively made the

16   sentencing guidelines advisory rather than mandatory.  Booker

17   requires to judges to not only consider the guideline range,

18   but also to consider the other factors listed in 18 United

19   States Code, Section 3553(a) in determining the appropriate

20   sentence.

21             The Court has considered the nature and circumstances

22   of the offense, as well as the history and characteristics of

23   the defendant.  The defendant was actively trying to engage

24   children in sexual activity, in addition to sharing and

25   possessing child pornography.  This offense is very serious

21

1    and as I have noted, the email and text messages sent by the

2    defendant are very disturbing.  The Court, however, has

3    acknowledged all of defendant's arguments regarding

4    emotional, psychological, and physical issues.  Further, the

5    report prepared by Dr. Reardon illustrates that defendant has

6    a low likelihood of recidivism.

7        The Court has also considered the need for the

8    sentence to reflect the seriousness of the offense, deter

9    others from criminal conduct, and to provide just punishment

10   for the offense, and the need to protect the public from

11   further crimes of the defendant.  The defendant's sentence

12   will serve as an adequate deterrent to others while providing

13   a fair and just punishment for the defendant.  And, this

14   lengthy sentence and term of supervised release will protect

15   the public from further crimes of the defendant and help

16   defendant to receive more treatment in hopes that he does not

17   repeat this conduct again.

18       Finally, the Court has considered the advisory

19   sentencing guidelines and the need to avoid unwarranted

20   sentencing disparities, and the slight reduction below the

21   advisory guideline range should not result in any sentencing

22   disparities.

23       In conclusion, after considering the facts of this

24   particular case, the advisory sentencing guidelines, the

25   Section 3553(a) statutory factors and the information in the

22

1    Presentence Report, the sentence imposed is sufficient, but

2    not greater than necessary to comply with the purposes of

3    sentencing outlined in Section 3553(a).  The sentence imposed

4    today will afford the defendant the appropriate and necessary

5    means of rehabilitation and give him the opportunity to lead

6    a productive life in the future.

7         Do the parties have any objections to the sentence

8    just pronounced that have not previously been raised?

9         MS. HILL:  Not on behalf of the government, Your

10   Honor.

11        MR. WEINER:  No, Your Honor.

12        THE COURT:  I will read you your appeal rights,

13   Mr. Fisher.  You can appeal your conviction if you believe

14   that your guilty plea was somehow unlawful or involuntary or

15   if there is some other fundamental defect in the proceedings

16   that was not waived by your guilty plea.  You also have a

17   statutory right to appeal your sentence under certain

18   circumstances, particularly, if you think the sentence is

19   contrary to law.  If you are unable to pay the costs of an

20   appeal, you may apply to this Court for appeal in forma

21   pauperis, that is without payment of fees and costs.  Do you

22   understand your rights, Mr. Fisher?

23        THE DEFENDANT:  Yes, Your Honor, I do.

24        THE COURT:  You may request the Clerk of this Court

25   to prepare and file of a notice of appeal on your behalf.  Do

23

1    you wish to have Clerk file a notice of appeal for you?

2              THE DEFENDANT:  Not at this time, Your Honor.

3              THE COURT:  Should you change your mind, you have

4    14 days to file your notice of appeal.  Contact your attorney

5    or the Clerk of this court through the U.S. Marshal's office

6    to file a notice of appeal.

7              Are there any other matters that we need to take care

8    of?  The defendant is in custody.  That we need to take care

9    of now?  And the Court will grant the motion of your lawyer

10   to request Elkton, if that's the appropriate place.

11             MR. WEINER:  Just one other thing, Your Honor, may I

12   request -- could I make an oral motion at this time that we

13   have these proceedings under seal?

14             THE COURT:  Yes.  Any objection, Ms. Hill?

15             MS. HILL:  No objection, Your Honor.

16             THE COURT:  The proceedings will be under seal and

17   remain under seal until further order of this Court.

18             MR. WEINER:  Thank you very much.

19             THE COURT:  There being no further business, we are

20   adjourned.

21             COURTROOM DEPUTY CLERK:  Ladies and gentlemen,

22   please rise.

23                             - - -

24

25

24

1

2

3

4                       C E R T I F I C A T E

5

6          I, Georgina Wells, do hereby certify that the

7    foregoing is a true and correct transcript of the

8    proceedings before the Honorable George C. Smith, Judge, in

9    the United States District Court, Southern District of Ohio,

10   Eastern Division, on the date indicated, reported by me in

11   shorthand and transcribed by me or under my supervision.

12

13

14                         s/Georgina Wells

15

16                         Georgina Wells,
                           Official Federal Court Reporter
17

18

19

20

21

22

23

24

25