# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

UNITED STATES OF AMERICA,

          Plaintiff,   :   Case No. 2:12-cr-162

                                          Chief Judge Algenon L. Marbley
- vs -                                Magistrate Judge Michael R. Merz

TONY R. FISHER,

          Defendant.   :

## REPORT AND RECOMMENDATIONS

This is an action pursuant to 28 U.S.C. § 2255 brought by Defendant Tony R. Fisher with the assistance of Attorney Steven Nolder. Fisher seeks relief from his 2013 conviction in this Court on his plea of guilty to one count of production of child pornography[1] in violation of 18 U.S.C. § 2251 (a)[2].

Upon order of the undersigned, the United States has filed a Response in opposition to the Motion to Vacate (ECF No. 60) and Defendant has filed a Traverse (ECF No. 61).

Fisher pleads the following grounds for relief:

> **Ground One:** My guilty plea was involuntary as it was based on my counsel's ineffectiveness when he informed me the nine images

---

[1] Fisher also pleaded guilty to one count of enticement of a minor for child pornography in violation of 18 U.S.C. § 2242. The instant Motion does not challenge that conviction.
[2] This count was originally charged in the Southern District of Indiana in that court's Case No. 1:12-cr-113. The Indiana case was transferred to this Court with Defendant's consent (Consent, ECF No. 21).

1

found on my laptop violated the child pornography production statute.

**Supporting Facts:** In pertinent part, the indictment returned by the grand jury in the SD of IN alleged I violated the production of child pornography statute when I "used John Doe, approximately age 13, to engage in sexually explicit conduct for the purpose of producing approximately nine visual images of such conduct, as defined in 18 U.S.C. 2256(2), while John Doe was dressed in a white tank top and near a couch in Fisher's residence in Indianapolis, Indiana ... " I took nine images of myself with a minor in the background asleep on a couch at my apartment in Indianapolis.

In all nine images, the minor was fully clothed and unaware of what I was doing. These images depict various angles of the minor sleeping and my nude erect penis in front of his face.

My attorney informed me that because the images depicted my nude erect penis and that I was engaged in "sexually explicit conduct," it was unnecessary for the minor to be depicted engaging in "sexually explicit conduct" to violate the production statute. However, I learned in the late summer of 2020 this advice was incorrect.

I relied on my attorney's incorrect advice in pleading guilty to producing child pornography. I've attached a legal memorandum addressing this claim.

**Ground Two:** My guilty plea was involuntary because the district court misadvised me about the first element of the production statute and the court committed plain error by entering judgment on the production count when there was no evidence the images captured a minor engaging in sexually explicit [conduct].

**Supporting Facts:** When the magistrate judge initially informed me of the requirements of the first element of the production statute, she described the means by which I could accomplish the end of having the minor engage in sexually explicit conduct in order to capture a visual image of it. The statement of facts read into the record to support my guilty plea did not allege the minor was engaging in sexually explicit conduct. After Detective Penwell

> concluded his statement of facts, the magistrate judge informed me the first element was satisfied as long as the images captured sexually explicit conduct and the minor was "utilized" in the images. When the nature of the offense was explained, there was no longer any mention the minor had to be engaging in that conduct. I've attached a legal memorandum addressing this claim.

(Motion to Vacate, ECF No. 56, PageID 361).

**Litigation History**

On June 4, 2012, an officer of the Department of Homeland Security obtained from Magistrate Judge Norah McCann King of this Court a warrant for the arrest of Defendant Tony Fisher upon a Complaint charging him with one count of attempted enticement of a child through interstate commerce, including by the internet, in violation of 18 U.S.C. § 2422(b)(ECF Nos. 1 & 2). Fisher traveled from Indianapolis, Indiana, to Franklin County, Ohio, for a fictitious meeting with a purported other ephebophile who was in fact Franklin County Deputy Sheriff Penwell acting as part of a Homeland Security Task Force (Affidavit, ECF No. 1). Fisher was arrested on Ohio criminal charges on June 1, 2012, and held until the federal arrest warrant was obtained.

On June 5, 2012, Judge King appointed counsel Attorney Nolder in his then-capacity as Federal Defender for this District (ECF No. 5). After hearing on June 8, 2012, Judge King ordered Fisher detained pending trial (ECF No. 8). On June 22, 2012, Attorney Sam Weiner entered his appearance as trial attorney in place of Attorney Nolder (ECF No. 11).

On August 9, 2012, Fisher entered into a Plea Agreement with the United States in which he agreed to plead guilty to the enticement charge made in the Complaint and later formalized in an Information ("Enticement Charge" ECF No. 15, ¶ 1). He also agreed to plead guilty to

> Count One of the Indictment filed in United States v. Tony R. Fisher, Southern District of Indiana case number, l: 12-cr-0113 ("the IN Case"), transferred to this district pursuant to Rule 20 of the Federal Rules of Criminal Procedure, which charges him with Production of Child Pornography, in violation of 18 U.S.C. § 225l(a)(the "Production Charge")

*Id*. Fisher acknowledged that the mandatory minimum term of imprisonment on the Production Charge was fifteen years (180 months). *Id*. at ¶ 2. The Agreement contains an integration clause (¶ 12) but no provisions at all regarding appeal or collateral attack.

On August 27, 2012, Fisher appeared before Judge King to tender a guilty plea pursuant to the Plea Agreement (Minute Entry, ECF No. 20; Transcript, ECF No. 51). After reviewing a Presentence Investigation Report, District Judge George Smith sentenced Fisher to the mandatory minimum 120 months on the Enticement Charge and 195 months on the Production Charge (Minutes, ECF No. 39; Judgment, ECF No. 40). Fisher took no appeal and his time to do so expired fourteen days after judgment or on June 12, 2013.

The instant Motion to Vacate was filed April 21, 2021 (ECF No. 56). Given the death of Judge Smith, the case has been reassigned to Chief Judge Algenon Marbley (ECF No. 46). The Motion was initially assigned to Magistrate Judge Chelsey M. Vascura, but transferred by her to the undersigned to help balance the Magistrate Judge workload in the District (ECF No. 57). Final decision of the § 2255 Motion remains with Chief Judge Marbley.

# Analysis

**Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA") enacted a one-year statute of limitations for § 2255 motions, 28 U.S.C. § 2255(f) which provides:

> (f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

When a defendant takes no appeal, his conviction becomes final when his time to appeal expires. *Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004). In this case judgment was entered on May 29, 2013, and the time for appeal expired on June 12, 2013.[3] Under

---

[3] Fed. R. App. P. 4(b)(1)(A). Respondent calculates the expiration date as June 21, 2013 (ECF No. 60, PageID 403). The Court cannot account for this error except to suppose a typographical transposition in entering the date.

28 U.S.C. § 2255(f)(1), Defendant's motion to vacate was required to be filed not later than June 13, 2014, but was in fact not filed until April 15, 2021, almost seven years late.

**Positions of the Parties**

Defendant asserts his late filing is excused by his "actual innocence" of the Production Charge. In the Motion itself he writes:

> The *Howard* decision makes it clear that I'm "actually innocent" of producing child pornography. The doctrine of "actual innocence" provides the gateway to file this 2255 motion even though it's filed more than one year after my conviction became final. Because the alleged production of child pornography occurred in the Southern District of Indiana, my case is governed by the Seventh Circuit's *Howard* decision. Upon learning of *Howard* and my attorney's ineffectiveness, I began gathering the supporting documents I'd need to file this motion and haven't been diliatory [sic] in proceeding. I've addressed this actual innocence gateway in the attached legal memorandum.

(ECF No. 56, PageID 368). This argument is elaborated in the memorandum in support of the Motion. *Id.* at PageID 377-81. Petitioner argues that in *United States v. Howard,* 968 F .3d 717 (7th Cir. 2020), on facts legally indistinguishable from those pleaded in the Production Charge, the Seventh Circuit decided that the conduct in question did not violate 18 U.S.C. § 2251(a).

Respondent concedes that proof of actual innocence will establish a "gateway" excusing a late § 2255 filing (Response, ECF No. 60, PageID 404, citing *McQuiggin v. Perkins*, 569 U.S. 383 (2013). However, the United States contests the applicability of *Howard* in the Sixth Circuit, where Fisher pleaded guilty, and asserts Fisher is not actually innocent under Sixth Circuit precedent. *Id.* at PageID 403-08.

6

In his Traverse, Fisher cites no authority for the proposition that the law of the transferor circuit applies in deciding a § 2255 motion in the transferee circuit. Instead he argues that the Sixth Circuit law interpreting 18 U.S.C. § 2251 does not establish that Fisher's conduct violates that statute (ECF No. 61, PageID 415-19). Second, he claims his consent to transfer the case to "was not the product of a knowing, intelligent, and voluntary relinquishment of a constitutional right." (Traverse, ECF No. 61, PageID 419-20, relying on *Johnson v. Zerbst*, 304 U.S. 458, 467-68 (1938), and asserting "an essential component of this decision is an understanding of the elements of the crime charged").

**Magistrate Judge's Analysis**

Because this is the Court in which Fisher was convicted and sentenced, he was required to bring his § 2255 motion here. § 2255 was adopted in 1948 to relieve the habeas corpus dockets of Districts with federal prisons and clearly requires § 2255 motions to be filed in the District of conviction. § 2255(a).

From the fact that venue is proper only in this Court, Respondent infers that we should apply the law of this circuit in determining whether Fisher is actually innocent.

Fisher first objects that the transfer is invalid because his consent waived his constitutional venue right and the consent was not knowing, intelligent, and voluntary (Traverse, ECF No. 61, PageID 420). He avers in his Affidavit attached to the Motion that

> (8) Mr. Weiner stated that even though the minor was fully clothed, I'd violated the production statute because I used the minor to produce images of me engaging in sexually explicit conduct. According to Mr. Weiner, it was unnecessary for the minor to be engaging in sexually explicit conduct to violate the production statute;

7

> (9) I relied on Mr. Weiner's advice in deciding to move the case from the Southern District of Indiana to the Southern District of Ohio to plead guilty to producing child pornography;
>
> (10) Had I been properly advised the minor had to be engaged in sexually explicit conduct to constitute a violation of the production statute, I would have never agreed to move the case from the Southern District of Indiana to the Southern District of Ohio for the purpose of entering a guilty plea. Instead, I would have insisted on going to trial for that offense.

(Affidavit, ECF No. 56-1, PageID 388).

Fisher argues this Affidavit is unrebutted (ECF No. 61, PageID 420), but it is also uncorroborated and self-serving. Accepting its truth for present purposes, however, it does not prove Fisher's consent to transfer was invalid because it assumes Attorney Weiner was bound as a matter of professional competence to accurately predict in 2012 what the Seventh Circuit would do in *Howard* eight years later. To put it the other way around, Fisher has offered no proof that the law in the Seventh Circuit before *Howard* made Fisher's indicted conduct lawful. Fisher raises no other objections to the transfer and the Court finds it constituted a knowing, intelligent, and voluntary waiver of Fisher's right under the Venue Clause of the Sixth Amendment to be tried in the Southern District of Indiana.

**Actual Innocence**

Both Fisher's response to the statute of limitations defense and his claims on the merits depend on his being "actually innocent" of the Production Charge. That is, if he is not actually innocent, his Motion is time-barred but also without merit because both Grounds for Relief rely

8

on the failure to predict *Howard*, Ground One by his lawyer and Ground Two by Magistrate Judge King.

Matthew Howard was tried on two counts of violating 18 U.S.C. § 2251(a) which provides in pertinent part:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), . . .

The *Howard* court summarized what it regarded as the pertinent part of this statute, "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in ... any sexually explicit conduct for the purpose of producing any visual depiction of such conduct" and found:

> The videos in question do not depict a child engaged in sexually explicit conduct; they show Howard masturbating next to a fully clothed and sleeping child. In other words, the videos are not child pornography. The government's theory is that Howard violated the statute by "using" the clothed and sleeping child as an object of sexual interest to produce a visual depiction of himself engaged in solo sexually explicit conduct. The government's interpretation of § 2251(a) stretches the statute beyond the natural reading of its terms considered in context.

968 F. 3d at 718. The court noted this was a novel case of statutory construction. *Id.* at 721. The court reasoned that the Government's construction of the statute would cover filming one's self masturbating while watching a child "across the street or in a neighbor's yard" and without the child being filmed. That, it thought, was too "strained" and "implausible" a reading. Instead,

9

> The most natural and contextual reading of the statutory language requires the government to prove that the offender took one of the listed actions to cause the minor to engage in sexually explicit conduct for the purpose of creating a visual image of that conduct. The six verbs that appear in the statute—"employs, uses, persuades, induces, entices, or coerces"—all describe means by which an exploiter might accomplish the end of having a child engage in sexually explicit conduct in order to capture a visual image of it. That is, they broadly describe the means by which someone might produce child pornography.

968 F. 3d at 721-22. Employing the interpretive doctrine of *noscitur a sociis*, the court concluded the words "uses" in § 2251(a) "must be construed in context with the other verbs that surround it," all of which "require some action by the offender to cause the minor's direct engagement in sexually explicit conduct. The sixth [verb] should not be read to have a jarringly different meaning. The *noscitur a sociis* canon has force here and constrains our interpretation of the word "uses."" 968 F.3d at 722. The court also relied on the *in pari materia* canon, asserting its interpretation was consistent "with the comprehensive scheme that Congress created to combat child pornography." 968 F.3d at 723. The Seventh Circuit did not cite any other court's adoption of its construction of the statute. Fisher does not cite any other court which has adopted the Seventh Circuit's construction. Writing a month after *Howard*, the District Court for Middle Florida rejected the Seventh Circuit's construction. *United States v. Poulo*, 491 F. Supp. 3d 1244, 1252-53 (M.D. Fla. Sept. 30, 2020).

**Retroactivity**

The Government does not appear to dispute that if Fisher had been charged under the same statute for the same conduct in a court in the Seventh Circuit after *Howard* was decided (August

> The most natural and contextual reading of the statutory language requires the government to prove that the offender took one of the listed actions to cause the minor to engage in sexually explicit conduct for the purpose of creating a visual image of that conduct. The six verbs that appear in the statute—"employs, uses, persuades, induces, entices, or coerces"—all describe means by which an exploiter might accomplish the end of having a child engage in sexually explicit conduct in order to capture a visual image of it. That is, they broadly describe the means by which someone might produce child pornography.

968 F. 3d at 721-22. Employing the interpretive doctrine of *noscitur a sociis*, the court concluded the words "uses" in § 2251(a) "must be construed in context with the other verbs that surround it," all of which "require some action by the offender to cause the minor's direct engagement in sexually explicit conduct. The sixth [verb] should not be read to have a jarringly different meaning. The *noscitur a sociis* canon has force here and constrains our interpretation of the word "uses."" 968 F.3d at 722. The court also relied on the *in pari materia* canon, asserting its interpretation was consistent "with the comprehensive scheme that Congress created to combat child pornography." 968 F.3d at 723. The Seventh Circuit did not cite any other court's adoption of its construction of the statute. Fisher does not cite any other court which has adopted the Seventh Circuit's construction. Writing a month after *Howard*, the District Court for Middle Florida rejected the Seventh Circuit's construction. *United States v. Poulo*, 491 F. Supp. 3d 1244, 1252-53 (M.D. Fla. Sept. 30, 2020).

**Retroactivity**

The Government does not appear to dispute that if Fisher had been charged under the same statute for the same conduct in a court in the Seventh Circuit after *Howard* was decided (August

3, 2020), he could not be convicted. However, he was convicted on May 29, 2013, more than seven years earlier. If Fisher had been convicted in the court of origin, would that court apply *Howard* retroactively to a conviction more than seven years old?

Fisher argues they would be obliged to do so because *Howard* adopted a new substantive rule, narrowing the class of persons the law punishes (Traverse, ECF No. 61, PageID 423, citing S*chriro v. Summerlin*, 542 U.S. 348, 351 (2004)). In *Schriro*, Justice Scalia wrote for the Court:

> When a **decision of this Court** results in a "new rule," that rule applies to all criminal cases still pending on direct review. *Griffith v. Kentucky,* 479 U.S. 314, 328, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987). As to convictions that are already final, however, the rule applies only in limited circumstances. New *substantive* rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms, see *Bousley v. United States*, 523 U.S. 614, 620-621, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998), as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish, see *Saffle v. Parks*, 494 U.S. 484, 494-495, 108 L. Ed. 2d 415, 110 S. Ct. 1257 (1990); *Teague v. Lane,* 489 U.S. 288, 311, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989) (plurality opinion). Such rules apply retroactively because they "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal'" or faces a punishment that the law cannot impose upon him. *Bousley, supra*, at 620, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (quoting *Davis v. United States*, 417 U.S. 333, 346, 41 L. Ed. 2d 109, 94 S. Ct. 2298 (1974)).

542 U.S. at 351-52 (bold face added). *Howard*, of course, is not a decision of the Supreme Court. Although it is a new substantive rule which narrows the range of conduct punishable under 18 U.S.C. § 2252(a), it does that only for the States within the Seventh Circuit. *Howard* in fact does not even bind other panels of the Seventh Circuit. See Garner, The Law of Judicial Precedent (2016), at p. 493, citing *United States v. Reyes-Hernandez*, 624 F.3d 405 (7th Cir. 2020); *Glaser v. Wound Care Consultants, Inc.,* 570 F.3d 907 (7th Cir. 2009); and *Russ v. Watts*, 414 F.3d 783 (7th

11

Cir. 2005). Nevertheless, because the *Howard* decision fits the definition of a new substantive rule made in *Schriro* and *Bousley*, the Magistrate Judge assumes the Seventh Circuit would apply it retroactively on collateral review.

**Alternative Statutory Construction**

District courts in the Sixth Circuit are not bound to follow Seventh Circuit precedent and in this case should not because its construction of § 2252(a) is unpersuasive.

Back to basics. In interpreting a statute a court should:

> 1. Decide what purpose ought to be attributed to the statute and to any subordinate provision of it which may be involved; and then
>
> 2. Interpret the words of the statute immediately in question so as to carry out the purpose as best it can, making sure, however, that it does not give the words either (a) a meaning they will not bear, or (b) a meaning which would violate any established policy of clear statement.

Hart and Sacks, THE LEGAL PROCESS (Eskridge & Frickey ed. 1994), p. 1169. "It is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meeting." *Cabell v. Markham*, 148 F.2d 737, 739 (2nd Cir. 1945)(L. Hand, J.). A court should reject an interpretation which is "plainly at variance with the policy of the legislation as a whole." *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 399, (6th Cir. 1998)(Boggs, J.) quoting *United States v. American Truckings Ass'ns,* 310 U.S. 534, 543, 60 S. Ct. 1059, 1064, 84 L. Ed. 1345 (1940).

Beginning with the purpose of a statute has an ancient lineage.

> "[a] construction made by the judges, that cases out of the letter of a statute, yet being within the same mischiefe, or cause of the making of the statute, shall be within the same remedie that the statute provideth; and the reason hereof is, that for the lawmakers could not possibly set downe all cases in express terms."

Sir Edward Coke, The First Part of the Institutes of the Laws of England §21, at 24.b (Philadelphia, Robert H. Small (1853)(1628), quoted in *Popovich v. Cuyahoga County Court,* 276 F.3d 808 (6th Cir. 2002).

The Magistrate Judge is of course aware that a purposive argument cannot overcome "the force of the plain text." *Mohamad v. Palestinian Auth.,* 566 U.S. 449, 460 (2012). But because statutes are texts adopted with a purpose, the purpose of the enactors cannot be safely ignored when interpreting the text.

In *United States v. Poulo*, 491 F. Supp. 3d 1244 (M.D. Fla. Sept. 30, 2020), the court faced the same interpretive question presented in *Howard* and here. Defendant photographed himself masturbating while a five-year-old girl watched but did not herself "participate." Judge Byron begins his opinion by referencing Supreme Court precedent on statutory interpretation:

> The Supreme Court instructs that in "any statutory construction case, '[w]e start, of course, with the statutory text,' and proceed from the understanding that '[u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *Sebelius v. Cloer,* 569 U.S. 369, 376, 133 S. Ct. 1886, 185 L. Ed. 2d 1003 (2013). Moreover, the Court presumes "that Congress legislates with knowledge of our basic rules of statutory construction." *McNary v. Haitian Refugee Ctr.,* 498 U.S. 479, 469 (1991). Justice Scalia announced the Court's "regular method" of construing a statute is as follows:
>
>> [F]irst, find the ordinary meaning of the language in its textual context; and second, using established canons of construction, ask whether there is any clear indication that

13

> some permissible meaning other than the ordinary one applies. If not—and especially if a good reason for the ordinary meaning appears plain—we apply that ordinary meaning.
>
> *Chisom v. Roemer*, 501 U.S. 380, 404, 111 S. Ct. 2354, 115 L. Ed. 2d 348 (1991) (Scalia, J., dissenting). Regarding textual context, Justice Scalia teaches the "fundamental principle of statutory construction (and, indeed, of language itself) [is] that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." *Deal v. United States*, 508 U.S. 129, 132, 113 S. Ct. 1993, 124 L. Ed. 2d 44 (1993). A provision which may seem ambiguous in isolation is often clarified by consulting the remainder of the statutory scheme. *United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). Thus, judges should deviate from the plain language of the text only where the textual reading leads to an absurd result.

491 F. Supp. at 1247.

Noting that the Eleventh Circuit had not addressed the specific issue, Judge Byron cites to *United States v. Lohse*, 793 F.3d 515 (8th Cir. 2015), where the court held the word "use" in 18 U.S.C. § 2251(a) included a defendant's taking "sexually explicit images of himself positioned over and near a sleeping minor child" because a reasonable jury could find defendant had "quite literally used the [minor] as a sexual object in orchestrating the nine photographs." 491 F. Supp. at 1249, quoting Lohse, 793 F.3d at 521-22.

In *United States v. Finley*, 726 F.3d 483 (3rd Cir. 2013), also cited by Judge Byron, the court addressed another sleeping child case, the court held

> a perpetrator can 'use' a minor to engage in sexually explicit conduct without the minor's conscious or active participation." *Id*. at 495. The Court further found the defendant's narrower interpretation of the statute would be "absurd and against the obvious policy of the statute." Id. The Court held: "It would be absurd to suppose that Congress intended the statute to protect children actively involved in sexually explicit conduct, but not protect children who are

14

> passively involved in sexually explicit conduct while sleeping, when they are considerably more vulnerable." *Id*.

491 F. Supp 3d at 1250. Here the Third Circuit expressly relies on the purposive context of 18 U.S.C. § 1251(a) to reject as absurd a reading of "uses" to exclude the use of sleeping children as filmed sexual objects.

This Court should also reject *Howard* and adopt Judge Byron 's reading of the statute. He interprets "use" in § 2251 in the context of other statues *in para materia* intended to suppress child pornography and concludes:

> By comparison, 18 U.S.C. § 2251—Sexual Exploitation and Other Abuses of Children—prohibits using a minor to engage in, as opposed to engaging in, any sexually explicit conduct or using a minor to assist another person to engage in such conduct. Thus, §§ 2251A, 2252, and 2252A all reflect Congressional intent that the minor engage in sexually explicit conduct as a performer, or actively assist another person to engage in such conduct. Thus, "engaging in" denotes Congress's intent that such language requires active participation by the minor in the prohibited sexually explicit conduct. Congress clearly knew how to include language that requires the minor to actively perform sexually explicit acts within the comprehensive statutory scheme. Congress declined to include this active participation requirement in § 2251(a), and the Court does not assume this is an oversight.

491 F. Supp. 3d at 1252. Thus his interpretation remains entirely within a consideration of Congressional language of the statute in suit, but makes sense of that language in its context.

**Application of the Recommended Construction**

Assuming the Court agrees with the Magistrate Judge's recommendation and adopts Judge Byron's construction, the remaining analysis is straightforward. Defendant Fisher's conduct

comes within the recommended construction of § 2251(a). Therefore he is not actually innocent of violating that statute. Under those circumstances, *McQuiggin* does not excuse his later filing and the § 2255 Motion should therefore be denied as untimely.

The Motion demonstrates that reasonable jurists can disagree on the correct interpretation of 18 U.S.C.§ 2251(a) and Defendant should therefore be granted a certificate of appealability on that question and on the question whether this Court is obliged to apply *Howard* because the offense conduct occurred in the Southern District of Indiana.

July 7, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.